IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2005

**STATE OF TENNESSEE v. GAY NATHAN YARBRO**

**Direct Appeal from the Circuit Court for Hardin County**
**No. 8180     C. Creed McGinley, Judge**

---

**No. W2005-00374-CCA-R3-CD  - Filed October 19, 2005**

---

The Defendant, Gay N. Yarbro, was convicted by a jury of introducing a controlled substance into a penal institution. The trial court sentenced the Defendant as a Range II, multiple offender to eight years in the Department of Correction for this offense, to be served consecutively to a sentence for a prior conviction. Additionally, the trial court revoked the Defendant's community corrections sentence for the prior conviction and ordered him to serve the original sentence in confinement. In this direct appeal, the Defendant challenges the sufficiency of the evidence supporting his conviction for introducing a controlled substance into a penal institution and further challenges the length of his sentence for that offense. The Defendant also challenges the trial court's revocation of his community corrections sentence on the prior conviction. We affirm the judgment of the trial court as to the instant conviction, and further affirm the trial court's order of revocation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Richard Deberry, Assistant Public Defender, Camden, Tennessee, for the appellant, Gay Nathan Yarbro.

Paul G. Summers, Attorney General & Reporter; Blind Akrawi, Assistant Attorney General; Robert Radford, District Attorney General; and John W. Overton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Kenneth Alexander, deputy jailer for the Hardin County Sheriff's Department, testified that, on June 7, 2004, the Defendant reported to the jail to serve forty-five days on a driving charge. The Defendant brought with him a clothes basket containing personal items he would need during his

confinement. The Defendant carried the basket to the counter so that it could be "logged in" after the Defendant's booking process was completed.

Deputy Alexander completed the Defendant's booking process and took him to a cell. Deputy Alexander then returned to the counter where the Defendant's basket was located and began to inventory the items in the basket. He noticed that a toothpaste box looked like it had been tampered with. Deputy Alexander opened the box and removed the tube of toothpaste. He then squeezed the tube and felt an object inside it. He handed the toothpaste tube to his partner and asked her if she could feel anything. She then squeezed the tube and opened the cap. As she continued to squeeze, Deputy Alexander testified, "it looked like a straw sticking out of the top of it."

At this point, Deputy Alexander's supervisor came over and sliced open the toothpaste tube with a knife. They then extracted "a straw filled with a green leaf substance which seemed to be marijuana." The supervisor put the straw into an evidence bag, sealed it and signed it.

On cross-examination, Deputy Alexander stated that, when the Defendant entered the jail, he set his basket by the booking counter as he walked up to it. "[R]ight then," Deputy Alexander placed the basket behind the counter. Deputy Alexander stated that the booking and "dressing out" process takes ten to fifteen minutes, after which the prisoner is put in a cell. Deputy Alexander stated that the Defendant's basket sat behind the counter "probably twenty minutes or longer" before he began inspecting the items therein.

Deputy Alexander testified that there are usually four trustees working around the jail. However, the trustees are "not allowed up there in the booking area when somebody is in there to be processed." Deputy Alexander maintained that it would be "highly unlikely" that a trustee would have been able to slip something into the Defendant's basket while he and his partner were otherwise occupied. He admitted, however, that it was "possible."

On redirect, Deputy Alexander was certain that it was the Defendant who brought the toothpaste tube into the jail in his basket.

Terry Dicus, investigator for the Hardin County Sheriff's Department, delivered the evidence bag containing the straw to the Tennessee Bureau of Investigation Crime Laboratory for testing. The laboratory subsequently delivered to Inv. Dicus a written report containing the results of the testing. Inv. Dicus testified that the report reflected that the substance contained in the straw consisted of 1.6 grams of marijuana.

Mike Fielder, chief deputy for the Hardin County Sheriff's Department, was called to the stand by the defense. He testified that he was the person who cut open the tube of toothpaste found in the Defendant's basket. Chief Fielder acknowledged being aware of a problem with trustees trying to smuggle items into the jail. He also acknowledged having locked up a trustee for going behind the booking stand. He stated that he had locked up two trustees in the previous six months for going behind the booking area.

On cross-examination, Chief Fielder stated that the problem with the two trustees going behind the booking area did not occur on June 7, 2004, the date on which the Defendant was booked into the jail.

Based on this proof, the jury determined the Defendant to be guilty of introducing a controlled substance into a penal institution.

## ANALYSIS

### I. Sufficiency of the Evidence

In his first issue, the Defendant contends that the evidence adduced at trial is not sufficient to support his conviction. Specifically, he argues in his appellate brief that "because of the unsecured area where his items were kept, and the real possibility that some jail trustee breaking the rules could have placed the controlled substance in his basket of items, . . . the evidence is not sufficient to convict him." The State responds that the evidence is, indeed, sufficient.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

Our criminal code provides that it is "unlawful for any person to: [k]nowingly and with unlawful intent take, send or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision any . . . controlled substances found in chapter 17, part

4 of this title." Tenn. Code Ann. § 39-16-201(a)(1). Marijuana is one of the specified controlled substances. See id. § 39-17-415(1).

The gist of the Defendant's argument is that the State did not carry its burden of proving that he was the individual who brought the adulterated toothpaste tube into the jail. That is, the Defendant contests the sufficiency of the State's proof as to his possession of the tube. We acknowledge that the proof of the Defendant's possession of the tube, and its introduction into the jail, is entirely circumstantial. No eyewitness or physical proof established that it was the Defendant who brought the toothpaste tube into the jail. Rather, the tube was found amidst items contained in a clothes basket that the Defendant was earlier observed to have brought into the jail. However, it is well-settled law in Tennessee that

> [c]ircumstantial evidence alone may be sufficient to support a conviction. "The law is firmly established in this State that to warrant a criminal conviction upon circumstantial evidence alone, the evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with his innocence and must exclude every other reasonable theory or hypothesis except that of guilt, and it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that he is the one who committed the crime." While following these guidelines, we must note that the jury decides the weight to be given to circumstantial evidence and that the "'inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'"

State v. Robinson, 73 S.W.3d 136, 147 (Tenn. Crim. App. 2001) (citations omitted).

In this case, Deputy Alexander testified that he saw the Defendant bring in a clothes basket when he entered the jail. The Defendant set this basket down by the booking counter. Deputy Alexander immediately took the basket and set it down behind the counter. Deputy Alexander then proceeded to process the Defendant into the jail's custody. Also present at the booking counter was Deputy Alexander's partner, Ann Driscoll. Deputy Alexander left the booking area only during the brief time that he supervised the Defendant's change of clothes and placement into a cell. As soon as he completed these tasks, he returned to the booking counter and began to inventory the items in the Defendant's basket.

Deputy Alexander testified that, at the time he was booking the Defendant into the jail, there was no one else in the room waiting to be booked. Officer Driscoll remained at the counter when Deputy Alexander left to "dress" the Defendant and deliver him to his cell. Deputy Alexander testified that it was Officer Driscoll's normal practice to wait for him to return before she left the area. While Deputy Alexander acknowledged that "anything is possible" with respect to the notion that a trustee could have slipped the toothpaste tube into the Defendant's basket, he maintained that it was "highly unlikely." He reiterated that the trustees were not allowed in the booking area during

the time that someone was being processed in. He also stated that "there was nobody back there while we was [sic] booking him in, no trustee."

Deputy Alexander's testimony was sufficient to enable the jury to conclude beyond a reasonable doubt that the Defendant brought the adulterated toothpaste tube into the jail. The item was found in a basket that the Defendant was observed bringing into the jail. The basket was under the supervision of Deputy Alexander and/or Officer Driscoll during the booking process. There is no proof whatsoever that anyone else was in the area or placed the tube into the Defendant's basket. The Defendant's theory of defense was based wholly on speculation and resulted in no proof consistent with the Defendant's innocence. The jury was entitled to draw the inference that the adulterated toothpaste tube was in the Defendant's clothes basket when he brought it into the jail. Accordingly, we hold that the State carried its burden of proving that the Defendant knowingly introduced a controlled substance into the jail. The Defendant's challenge to the sufficiency of the evidence is without merit.

## II. Length of sentence

The Defendant next contends that the trial court erred in setting the length of his sentence. The State disagrees and urges us to affirm the trial court in this regard.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes

and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

The Defendant's offense is a Class C felony. See Tenn. Code Ann. § 39-16-201(b). The Defendant was sentenced as a Range II, multiple offender, a classification he does not contest. The Range II sentence for a Class C felony is six to ten years. See id. § 40-35-112(b)(3). The trial court sentenced the Defendant to a mid-range term of eight years based on the enhancement factor that the Defendant has "a previous history of criminal convictions . . . in addition to those necessary to establish the appropriate range." Id. § 40-35-114(2). The trial court found no mitigating factors and specifically rejected as a mitigating factor that the Defendant's criminal conduct "neither caused nor threatened serious bodily injury." Id. § 40-35-113(1). The trial court rejected this mitigating factor because "it's inherent in the offense when you ship dope into a prison facility, that it can lend itself to problems." Indeed, Deputy Alexander testified at the trial that the presence of drugs amongst the jail population caused problems by making the inmates who took the drugs "hard to deal with." Additionally, he testified, it frequently caused fights and, with the number of people they housed in the jail, "it's dangerous to them and us."

The Defendant asserts that the trial court erred in failing to reduce his sentence on the basis of this mitigating factor. We disagree. The proof at trial established that the Defendant's conveyance of marijuana into the jail created a very real threat of violence to both the jail population and the employees of the Sheriff's Department. The trial court correctly recognized this danger. This issue is without merit.

The Defendant also complains that the single enhancement factor applied by the trial court was not sufficient to increase his sentence by two years.[1] Again we disagree. The trial court found that the Defendant has "a substantial number of convictions in addition to those necessary to establish the range in this case, some of them misdemeanors and some of them felonies." The trial court accorded this enhancement factor "great weight." As this Court has previously recognized, "[p]rovided the trial court complies with the purposes and principles of the Criminal Sentencing Reform Act of 1989 and its findings are adequately supported by the record, the weight afforded to enhancement and mitigating factors is left to the trial court's discretion." State v. Souder, 105 S.W.3d 602, 606 (Tenn. Crim. App. 2002). We see no abuse of discretion by the trial court in this instance. Based upon one enhancement factor and no mitigating factors, the trial court increased the Defendant's sentence from the presumptive sentence of six years to a mid-range sentence of eight years. The record supports the trial court's decision. This issue is without merit.

---

[1]The presumptive sentence for a Class C felony is the minimum in the range, see Tenn. Code Ann. § 40-35-210(c), or, in this case, six years. The presumptive sentence is subject to adjustment based on the trial court's application of mitigating and/or enhancement factors. See id. § 40-35-210(e).

### III. Revocation of community corrections

On December 2, 2002, judgment was entered against the Defendant on a conviction of possession of over .5 grams of cocaine with intent to sell. The Defendant was sentenced to eight years for this offense, to be served one year in confinement and seven years on community corrections. The Defendant committed the instant offense on June 7, 2004. Thus, the Defendant was in the process of serving the community corrections portion of his prior sentence at the time he committed the instant offense. In September 2004, a warrant was issued against the Defendant for violating his community corrections sentence.

At the conclusion of the sentencing hearing on the instant offense, the trial court revoked the Defendant's community corrections service on the prior conviction. The Defendant now challenges the trial court's ruling on the basis that the revocation "will not subserve the ends of justice in the best interests of both the public and the defendant." We disagree.

The trial court has the discretion to revoke a community corrections sentence upon a finding that the defendant has violated the conditions of the agreement. See Tenn. Code Ann. § 40-36-106(e)(4); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). The court may then resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum provided for the offense committed, less any time actually served in any community-based alternative to incarceration. See Tenn. Code Ann. § 40-36-106(e)(4); State v. Samuels, 44 S.W.3d 489, 493 (Tenn. 2001).

The proof of a community corrections violation need not be established beyond a reasonable doubt; it is sufficient if it allows the trial court to make a conscientious and intelligent judgment. See Harkins, 811 S.W.2d at 82-83. When revoking a community corrections sentence, the trial court must place its findings of fact and the reasons for the revocation on the record. See Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973).

The Tennessee Supreme Court has held that an abuse of discretion standard of appellate review should be used to address the revocation of a community corrections sentence. See Harkins, 811 S.W.2d at 82-83. Before a reviewing court is warranted in finding an abuse of discretion in a community corrections revocation, it must be established that the record contains no substantial evidence to support the conclusion of the trial court that the defendant violated the terms of the community corrections program. See id.

The record before this Court contains a copy of the Defendant's Community Corrections Program Behavioral Agreement which sets forth the terms with which the Defendant agreed to comply while serving his sentence on community corrections. One of the terms is that the Defendant would "obey the laws of the United States or any state in which he/she may be as well as any municipal ordinances." Following the Defendant's arrest on the instant offense, a violation warrant was issued as to the Defendant's community corrections sentence, in part on the basis that the Defendant had been charged with the instant offense. Following the Defendant's conviction on the instant offense, and after the Defendant's sentencing hearing thereon, the trial court revoked the

Defendant's community corrections sentence for the previous conviction, in part because of the Defendant's charge of introducing contraband into a penal institution.

The record supports the trial court's decision to revoke the Defendant's community corrections sentence on the basis of the instant charge. The Defendant has demonstrated himself, by his continuous course of criminal conduct, even while on release status, to be a poor candidate for rehabilitation. The trial court's determination that the Defendant requires incarceration is not an abuse of discretion. The Defendant's contention that the trial court's ruling does not serve the ends of justice is without merit.

## CONCLUSION

We affirm the Defendant's conviction of introducing a controlled substance into a penal institution. We affirm the Defendant's eight year sentence for that offense. We affirm the trial court's revocation of the Defendant's community corrections sentence for his prior conviction.

_____
DAVID H. WELLES, JUDGE